# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **FELDON BUSH, Sr., JAMES HILL,** **and ANTHONY ALLEN,** | : | |
| | : | **CIVIL ACTION NO. 1:10-2246** |
| **Plaintiffs,** | : | |
| | : | **(RAMBO, D.J.)** |
| **v.** | | **(MANNION, M.J.)** |
| | : | |
| **ED RENDELL, Governor, *et al.*,** | | |
| | : | |
| **Defendants.** | | |

## <u>REPORT AND RECOMMENDATION[1]</u>

Pending before the court are two separate motions to dismiss. The first motion to dismiss is on behalf of defendants Richard Rogers, Centre County Commissioner; H. Scott Conklin, President of the Centre County Prison Board; and Edward Desabato, Warden of Centre County Correctional Facility (collectively the "County Defendants"). (Doc. No. 68). The second motion to dismiss is on behalf of defendants Ed Rendell, Governor; Shirley Moore-Smeal, Superintendent of the Pennsylvania Department of Corrections; and Marirosa Lamas, Superintendent of the State Correctional Institution at Rockview, (collectively the "Commonwealth Defendants"). (Doc. No. 70).

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited herein have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

I.     **FACTS AND PROCEDURAL BACKGROUND**[2]

Plaintiffs Bush, Hill and Allen take issue with the fact that they were transferred from a state correctional institution to a county facility in order to serve their state sentences. (Doc. No. 25). Specifically, the plaintiffs allege that they were transferred from the State Correctional Institution at Rockview in Bellefonte, Pennsylvania ("SCI-Rockview") to the Centre County Correctional Facility in Bellefonte, Pennsylvania ("CCCF") because of overcrowding issues within the Department of Corrections ("DOC"). Plaintiffs further complain that the conditions of confinement at CCCF are more onerous than at SCI-Rockview. *Id.* More specifically, the plaintiffs complain about the medical care, heat, ventilation, food, water, access to the courts, law library, religious services, exercise, outdoor recreation, jobs, idle pay, rehabilitative/educational programs, visitation, commissary, disciplinary policies, mail tampering, haircuts, segregation/isolation and race discrimination that state inmates are subjected to at CCCF.

The gravamen of plaintiffs' allegations against the Commonwealth and

---

[2] Although the plaintiffs set forth additional allegations in their briefs, the court is unable to consider these new factual allegations. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 109 n.9 ( 3d Cir. 2002) (". . . [A] prisoner plaintiff - or any other plaintiff - should not be able effectively to amend a complaint through any document short of an amended pleading.")

County defendants concerns their roles in effectuating plaintiffs' transfer to CCCF.

<u>Commonwealth Defendants</u>

With respect to defendant Governor Rendell, the plaintiffs allege that, despite his ability to so, he has failed to remedy prison overcrowding, and as a result, the plaintiffs were transferred to CCCF. (Doc. No. 25 at 2). With respect to defendant Moore-Smeal, Superintendent of the Department of Corrections, and defendant Lamas, Superintendent of SCI-Rockview, the plaintiffs allege that they authorized, directed and effectuated their transfer to CCCF. *Id.* at 2-4.

<u>County Defendants</u>

With respect to defendant Rogers, Centre County Commissioner, the plaintiffs allege that he was personally involved in the contract negotiations, assignment and housing of state inmates in county facilities throughout Pennsylvania. *Id.* at 5. Plaintiffs also allege that he has a role in establishing the operations, policies, procedures and regulations governing the transfer of state inmates to county facilities. *Id.* With respect to defendant Conklin, President of the Centre County Prison Board, plaintiffs allege that he (1) has the ability to control CCCF's operations and contracts entered into by CCCF,

3

(2) was personally involved with forming the contract that was entered into by the Pennsylvania Department of Corrections and CCCF, and (3) acted as an agent of the Department of Corrections who transferred plaintiffs to CCCF. *Id.* Finally, with respect to defendant Desabato, Warden of CCCF, plaintiffs allege that, as Warden, he (1) is responsible for the daily operations, custody, care, safety, and security of all state inmates at CCCF, (2) makes the final decisions on grievances filed by state inmates at CCCF, and (3) has denied all grievances concerning the issues raised in the amended complaint. *Id.*

Based on the foregoing, the plaintiffs commenced this civil rights action by filing a complaint on November 1, 2010. (Doc. No. 1). On December 27, 2010, the plaintiffs filed their first amended complaint, (Doc. No. 25), and on April 25, 2011, the plaintiffs filed a motion for a temporary restraining order/preliminary injunction ("TRO/PI"), (Doc. No. 53). On May 11, 2011, the undersigned issued a Report and Recommendation that recommended the plaintiffs' motion for a TRO/PI be denied because (1) the relief sought by plaintiffs was based on alleged past violations and there was no indication that there was a present threat of harm, and (2) the acts the TRO/PI sought to enjoin were not committed by any of the named defendants. (Doc. No. 59). After the undersigned issued that Report and Recommendation, the plaintiffs

filed a motion for reconsideration of the Report and Recommendation which the District Judge deemed as objections to the Report and Recommendation. *See*  (Doc. No. 64) & (Doc. No. 92). In the objections to the Report and Recommendation, the plaintiffs asserted that mail to this court was intercepted by correctional facility employees and sent back to plaintiffs, and that a court order sent to plaintiffs was opened by the warden. (Doc. No. 64). Based on that information, the District Judge found that the mail tampering claim was ongoing and appeared to be a hindrance to plaintiffs' access to this court. (Doc. No. 92). Accordingly, on June 21, 2011, the District Judge issued an ordered that stated:

> b) The recommendation that the motion for a temporary restraining order and preliminary injunction be denied is accepted in part. The recommendation is not accepted at this time as to the allegations of prison officials interfering with Plaintiffs' mailings to this court and disposition of the motion is deferred pending further order of court.
>
> 2) No later than July 6, 2011, Plaintiff Bush shall supply to this court the names of the prison officials allegedly interfering with his mail. To the extent that these persons are not named defendants in the present action, Plaintiff Bush shall file an amended complaint.

(Doc. No. 92 at 2).

Consequently, on June 30, 2011, the plaintiffs filed their second amended complaint, (Doc. No. 96). A review of that amended complaint

revealed that plaintiff Bush had asserted claims against defendants Prime Care Medical, Inc., Nurse Dawn, Nurse Mary Ann, Lieutenant Flasher, Lieutenant Gordon and Mail Inspector Correctional Officer Calhoun. *Id.* More specifically, the plaintiff had brought claims regarding the interference with his mail against defendants Flasher, Gordon and Calhoun; claims regarding the medical care he had received against defendants Prime Care Medical, Inc., Nurse Dawn and Nurse Mary Ann; and retaliation claims against defendant Flasher. *Id.*

To the extent plaintiff Bush had alleged any new claims against any newly added defendants that did not relate to his claims regarding interference with his mail, those newly added claims were improper. *See* (Doc. No. 123). Specifically, plaintiff's newly asserted claims regarding his medical treatment and retaliation were improper. *Id.* Moreover, a review of plaintiff Bush's amended complaint indicated that he had omitted the claims that were raised in the first amended complaint, (Doc. No. 25). *Id.* As such, the undersigned directed the plaintiffs to file a third amended complaint by September 20, 2011 that contained (1) the claims the plaintiffs still wished to pursue that were raised in the first amended complaint, (Doc. No. 25), and (2) plaintiff Bush's claims regarding interference with his mail. *Id.*

6

Accordingly, on September 16, 2011, the plaintiffs filed their third amended complaint, (Doc. No. 128). In the third amended complaint, the plaintiffs indicate that:

> "the court misconstrued the plaintiff's second amended complaint. It was not intended to remove the original defendants from this suit. The second amended complaint was only meant to be an add on to those claims that were already filed in the first well-pleaded amended complaint.
>
> Plaintiffs wish for this court to consider all claims already raised in the first original amended complaint with all of the evidence submitted by the plaintiffs . . . Plaintiffs' respectfully request this court to reinstate the first original amended complaint and all claims raised therein. As concerning the other defendants [that were newly added in the second amended complaint,] Lt. Flasher, Lt. Gordon, C/O Caloun, Prime Medical Care Inc., Nurse Dawn, and Nurse Lee Ann, the plaintiffs' will file a new complaint against those defendants."

*Id.* at 3-4 (emphasis in original).

As plaintiffs emphasized that they wanted the first amended complaint to be the operative complaint in this action, the court deemed the first amended complaint, (Doc. No. 25), as the operative complaint. (Doc. No. 168). Moreover, in the third amended complaint, plaintiff Bush indicated that plaintiffs would pursue the mail tampering claims in a separate action, and not this action. (Doc. No. 128). Accordingly, plaintiff Bush has filed a new action, 1:11-cv-1738, which addresses his mail tampering claims against defendants

7

Flasher, Gordon and Calhoun.

On May 31, 2011, the County Defendants filed a motion to dismiss the plaintiffs' first amended complaint,(Doc. No. 68), and on June 1, 2011, the Commonwealth Defendants filed a motion to dismiss the plaintiffs' first amended complaint,(Doc. No. 70). These motions are fully briefed. *See* (Doc. No. 69), (Doc. No. 71), (Doc. No. 74), (Doc. No. 77), (Doc. No. 81) & (Doc. No. 90). Thus, the motions to dismiss are ripe for our consideration.

## II.    STANDARDS

### A.  Rule 12(b)(6) Standard of Review

The defendants' motions to dismiss are brought pursuant to the provisions of Fed. R. Civ. P. 12(b)(6). This rule provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007) (abrogating "no set of facts"

language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. 544, 127 S. Ct. at 1965. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action. *Id.* Furthermore, in order to satisfy federal pleading requirements, the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (brackets and quotations marks omitted) (quoting *Twombly*, 550 U.S. 544, 127 S. Ct. at 1964-65).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not

9

physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

## B. Standard of Review of Substantive Law Under 42 U.S.C. §1983

Section1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. §1983. Section 1983 creates no substantive rights, but rather allows a plaintiff to vindicate violations of rights created by the United States Constitution or federal law. *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979); *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006).

### III.   ANALYSIS

The defendants have raised various arguments as to why the plaintiffs' claims should be dismissed. The court will consider these arguments below.

### A.   Official Capacity Claims

#### 1.   County Defendants

To the extent the plaintiffs bring claims against the County Defendants in their official capacities, the plaintiffs are really bringing claims against the county, namely Centre County. A municipality is a "person" for purposes of §1983. *Bd. of the County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 689 (1978)). But §1983 does not allow municipal liability under a theory of *respondeat superior*. *Id.* As such, a municipality is not liable under §1983 merely for employing someone who violates a person's civil rights; rather, a municipality that does not directly violate a person's civil rights is liable only where it has in place a policy or custom that led to the violation. *Id.* This rule ensures that a municipality will only be liable where it is the "moving force" behind the plaintiff's injury. *Id.* The plaintiff bears the burden of

identifying the policy or custom.[3] *Id.*

Plaintiffs' amended complaint fails to identify any policy or custom of Centre County that caused the alleged constitutional violations. Nevertheless, in plaintiffs' brief in opposition they assert that the applicable policy or custom is "the Department of Corrections deliberately taking state inmates out of the state systems and denying them all mandated serviced once outsourced to county jails." (Doc. No. 90 at 7). Assuming that such conduct amounted to a custom or policy, the trouble with the plaintiffs' argument is that it points to a DOC policy or custom, and *not a* policy or custom of Centre County. Therefore, the court recommends that plaintiffs' official capacity claims against the County Defendants be dismissed.

### 2.   Commonwealth Defendants

To the extent the plaintiffs have brought claims against the Commonwealth Defendants in their official capacities, the plaintiffs are really bringing claims against the Commonwealth of Pennsylvania. Federal courts

---

[3] A policy is shown when "a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Beck v. City of Pitt.*, 89 F.3d 966, 971 (3d Cir. 1996) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). A custom is defined as "such practices of state officials so permanent and well-settled as to constitute law," which can be established by showing the policy maker's knowledge and acquiescence to the custom. *Id.*

cannot consider suits by private parties against states and their agencies unless the state has consented to the filing of such a suit. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 241 (1985); *Edelman v. Jordan*, 415 U.S. 651, 662 (1974). This immunity extends to suits asserting civil rights violations where the state is named as a defendant. *Laskaris v. Thornburgh*, 661 F.2d 23, 26 (3d Cir.1981). "Under the Eleventh Amendment, a plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power." *Chittister v. Dep't of Cmty. & Econ. Dev.*, 226 F.3d 223, 226 (3d Cir.2000). The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment. "By statute Pennsylvania has specifically withheld consent [to be sued]." *Laskaris*, 661 F.2d at 25 (citing PA. CONS. STAT. §8521(b)). Section 1983 or 1985 does not "abrogate the Eleventh Amendment immunity of the States." *Quern v. Jordan*, 440 U.S. 332, 345 (1979); *Galavani v. Pennsylvania*, No. 08-0393, 2008 U.S. Dist. LEXIS 89150, at *16 (M.D. Pa. Nov. 4, 2008).

Nonetheless, the plaintiffs assert that the Eleventh Amendment cannot bar their claims against the Commonwealth Defendants in their official

capacities. Specifically, the plaintiffs rely on the medical-professional liability exception in 42 Pa. Cons. Stat. §8522(b). The medical-professional liability exception to sovereign immunity applies to "acts of health care employees of Commonwealth agency medical facilities or institutions or by a Commonwealth party who is a doctor, dentist, nurse or related health care personnel." Id. §8522(b)(2). In the present action, there are no named defendants who are health care employees, and, as such, the court must find that the plaintiffs' argument lacks merit.

Consequently, the court recommends that the amended complaint be dismissed to the extent plaintiff brings claims for damages against the Commonwealth Defendants in their official capacities. See Lattaker v. Rendell, 269 Fed. Appx. 230, 232 (3d Cir. 2008) (Eleventh Amendment immunity bars claims for damages against Commonwealth officials in their official capacities).

## B.    Due Process Claim

The Commonwealth Defendants and the County Defendants assert that the plaintiffs' transfer from a state correctional facility to a county facility, does not, alone, amount to a violation of the plaintiffs' due process rights under the Fourteenth Amendment. The court agrees. It has long been held that an

14

inmate has no constitutional right to placement in any particular correctional institution or in any particular section within an institution. *See Olim v. Wakinekona*, 461 U.S. 238, 245 and n.9 (1983); *Meachum v. Fano*, 427 U.S. 215 (1976); *Young v. Quinlan*, 960 F.2d 351, 358, n.16 (3d Cir. 1992); *Flanagan v. Shively*, 783 F.Supp. 922 (M.D.Pa.1992), *aff'd* 980 F.2d 722 (3d Cir. 1992). Furthermore, "Pennsylvania code clearly states than an inmate does not have a right to be housed in a particular facility." *See Jerry v. Williamson*, 211 Fed. Appx. 110,  112 (3d Cir. 2006) (citing 37 Pa. Code. §93.11(a)). Moreover, pursuant 61 Pa. Cons. Stat. §1151(a), "The secretary or his designee may transfer inmates in the State correctional institution system to the jurisdiction of a county correctional institution system upon such terms and conditions that the secretary or his designee and the chief administrator of the county correctional institution determine to be in the best interests of the Commonwealth." Because the plaintiffs do not have a federal or state protected liberty interest in their place of confinement, the court recommends that plaintiffs' due process claims challenging their transfer to CCCF be dismissed.

### C.   First, Eighth and Fourteenth Amendment Claims

Next, plaintiffs complain about the medical care, dental care, mental

15

health care, heat, ventilation, food, water, access to the courts, law library, religious services, exercise, outdoor recreation, jobs, idle pay, rehabilitative/educational programs, visitation, commissary, disciplinary policies, mail tampering, haircuts, segregation/isolation and race discrimination that state inmates are subjected to at CCCF. Consequently, the plaintiffs claim that these alleged deprivations amount to violations of the First, Eighth and Fourteenth Amendment Due Process rights of state inmates confined at CCCF.

The defendants argue that the plaintiffs lack standing to raise these claims because they are raised on behalf of state inmates, and not the plaintiffs themselves.[4] The court agrees. In the amended complaint, the plaintiffs do not plead facts showing how they personally have been deprived of any of these rights, necessities or privileges. Rather, the plaintiffs' raise these First, Eighth and Fourteenth Amendment claims on behalf of all state inmates at CCCF and, as such, the court finds that the plaintiffs lack standing. *Wenk v. N.J. Dep't of Corr.*, No. 11-4430, 2011 U.S. Dist. LEXIS 101319, at *4 (D.N.J. Sept. 6, 2011) ("Plaintiff cannot raise claims on behalf of other

---

[4] The only exception to this is plaintiff Bush's claim regarding inadequate dental care. However, as will be explained below, plaintiff Bush's Eighth Amendment claim should also be dismissed.

16

inmates who actually suffered an injury or are facing an imminent injury; this is so because Plaintiff lacks standing to raise these challenges."); *Allen v. Passaic County Jail*, No. 09-0408, 2009 U.S. Dist. LEXIS 113560, at *10-11(E.D. Pa. Dec. 4, 2009) ( ". . . [A] prisoner lacks standing to raise claims on behalf of others. Thus, to the extent plaintiff alleges injuries to 'Philadelphia inmates' incarcerated at Passaic County Jail generally, plaintiff lacks standing to seek relief with respect to those injuries."). Therefore, the court recommends that plaintiffs' First , Eighth and Fourteenth Amendment claims on behalf of state inmates be dismissed as plaintiffs lack standing to bring these claims.[5]

### D.    Plaintiff Bush's Eighth Amendment Claim

Plaintiff Bush alleges that he has been denied dental care for his

---

[5]  However, even if the court was to assume that plaintiffs had standing to raise these claims, the court would still recommend that plaintiffs' First, Eighth Amendment and Fourteenth Amendment Due Process claims be dismissed because (1) the plaintiffs fail to explain the extent to which they personally suffered any deprivation or when the alleged deprivation occurred, and (2)  plaintiffs fail to clearly state the personal involvement of any named defendant beyond scant conclusory statements of their knowledge of and acquiescence in the conditions in the prison. *See*, *e.g.*, *See Taylor v. Oney, 196 Fed. Appx. 126, 128 (3d Cir. 2006)* (First Amendment claims); *Robles v. Casey*, 10-2663, 2011 U.S. Dist. LEXIS 65248, at *13 (M.D. Pa. June 8, 2011) (Eighth Amendment claims); *Veteto v. Miller, 829 F. Supp. 1486, 1496-97 (M.D. Pa. 1992)* (Fourteenth Amendment Due Process claims).

bleeding gums, lacerations, cavities, gum disease and pericoronitis[6]. As such, he claims that this denial of medical care amounts to a violation of the Eighth Amendment.

To state a claim under the Eighth Amendment for denial of medical care, a prisoner-plaintiff must show that the defendants were deliberately indifferent to his serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). A "serious" medical need is one "that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth County Corr. Inst. v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987), *cert. denied*, 486 U.S. 1006 (1988). Deliberate indifference occurs when an official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, to successfully state a claim, a plaintiff must allege that the defendant acted with a sufficiently culpable state of mind, *Wilson v. Seiter*, 501 U.S. 294, 298,(1991), and must in some way "connect[] his factual allegations to the alleged mental states" of the defendants, *Spruill v. Gillis*, 372 F.3d 218, 237 (3d Cir. 2004).

---

[6] Pericoronitis is defined as an "inflamation around the crown of a tooth." Taber's Cyclopedic Medical Dictionary 1467 (17th ed. 1993).

18

Mere negligence, unsuccessful medical treatment, or medical malpractice do not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Estelle*, 429 U.S. at 106; *Spruill*, 372 F.3d at 237; *Lanzaro*, 834 F.2d at 346. "[P]rison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners," *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993), and courts will "disavow any attempt to second guess the propriety or adequacy of a particular course of treatment . . . which remains a question of sound professional judgment" *Little v. Lycoming County*, 912 F. Supp. 809, 815 (M.D. Pa.1996) (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)). "While the distinction between deliberate indifference and malpractice can be subtle, it is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights." *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990).

"'Deliberate indifference,' therefore, requires 'obduracy and wantonness,' which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986) and

19

citing *Farmer*, 511 U.S. at 842). The deliberate indifference standard is, of course, clearly met when a doctor is intentionally inflicting pain on a prisoner. *Spruill*, 372 F.3d at 235. Deliberate indifference has also been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197 (citing *Durmer*, 991 F.2d at 68). Deliberate indifference has also been found "when the prison official persists in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" *Id.* (quoting *White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)*).

The court finds that plaintiff Bush has failed to state a claim for inadequate medical care under the Eighth Amendment. Although plaintiff Bush alleges that he was denied treatment for his dental issues, plaintiff Bush has failed to allege that any of the named defendants denied him treatment for his medical needs. *See Adams v. Hunsberger*, 262 Fed. Appx. 478, 481 (3d Cir. 2008) (finding the plaintiff failed to satisfy the requirements of an Eighth Amendment medical care claim because he failed to allege that any of the named defendants personally denied him medical care). Consequently,

the court recommends that plaintiffs' Eighth Amendment claims regarding inadequate medical care be dismissed.

### E.    Fourteenth Amendment Equal Protection Claims

The plaintiffs complain that the DOC treats state inmates housed at CCCF differently from other state inmates.[7] More specifically, plaintiffs contend that as state inmates confined at CCCF, they are denied the benefits that are enjoyed by state inmates confined at state facilities. Consequently, the plaintiffs bring an equal protection claim against the defendants.

The  Equal Protection Clause of the Fourteenth Amendment requires that all persons "similarly situated" to be treated alike by state actors. *See City of Cleburne, Texas v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). As such, in order for plaintiffs to state an equal protection violation, they must show that they were similarly situated to, and treated differently from, other inmates, and that this discrimination was purposeful or intentional rather than incidental. *Washington v. Davis*, 426 U.S. 229, 239 (1976); *Tillman v. Lebanon County Corr. Facility*, 221 F.3d 410, 424 (3d Cir. 2000).

---

[7] It appears that plaintiffs' equal protection claim is brought on behalf of the plaintiffs and state inmates. To the extent the equal protection claim is brought on behalf of state inmates, the court recommends that this claim be dismissed because the plaintiffs lack standing to bring such a claim. *See* Part III, [C], *supra.*

Here, the complaint fails to allege that any discrimination was purposeful or intentional. To the contrary, throughout plaintiffs' complaint, they repeatedly acknowledge that they were transferred to CCCF because of prison overcrowding which resulted in different conditions of confinement. Thus, there are no allegations that any of the named defendants of purposefully or intentionally discriminated against the plaintiffs or any other state inmates. As such, the plaintiffs' complaint should be dismissed with respect to their equal protection claim. *See, e.g., Brown v. Beard*, No. 07-0637, 2011 U.S. Dist. LEXIS 29041, at *60-62 (W.D. Pa. Mar. 21, 2011).

## IV.   RECOMMENDATION[8]

For the reasons elaborated above, **IT IS RECOMMENDED THAT**:

**(1)**   the County Defendants' motion to dismiss, (Doc. No. 68), be **GRANTED**;

**(2)**   the Commonwealth Defendants' motion to dismiss, (Doc. No. 70), be **GRANTED**; and

**(3)**   the plaintiffs' motion for temporary restraining order/preliminary

---

[8] For the convenience of the reader, the court has attached copies of unpublished opinions cited within this document.

injection, (Doc. No. 53), motion for mandatory injunctions, (Doc. No. 113), motion to compel, (Doc. No. 131), and motion for temporary restraining order, (Doc. No. 147), be **DENIED as MOOT**.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States Magistrate Judge**

**DATE:** December 19, 2011
O:\shared\REPORTS\2010 Reports\10-2246-02.wpd

23